1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

9

10

CHRISTOPHER W. CARDWELL,

Plaintiff,

11

v.

12

A. KETTELHAKE, et al.,

13

Defendants.

14

CASE NO. 2:08-CV-01006-JLR

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

## I.      INTRODUCTION

15

16      This matter comes before the court on Defendants Nurse Kettelhake, Nurse

17 Camacho, Nurse Miller, Nurse Unterreiner, Doctor Colleti, and Doctor James's

18 (collectively, "Defendants") motion for summary judgment on Plaintiff Christopher W.

19 Cardwell's Eighth Amendment claims of cruel and unusual punishment.  (Mot. (Dkt. #

20 56).)  Having reviewed Defendants' motion (Dkt. # 56), Mr. Cardwell's response (Dkt. #

21 63), Defendants' reply (Dkt. # 66), the remainder of the record, and the relevant law, the

22 court GRANTS in part and DENIES in part Defendants' motion (Dkt. # 56).

ORDER- 1

## II.    BACKGROUND

1

2       At all times relevant to the present motion, Mr. Cardwell was an inmate

3    incarcerated within the California Department of Corrections and Rehabilitation

4    ("CDCR").  (Mot. at 3.)  Mr. Cardwell alleges that while incarcerated he was subjected to

5    cruel and unusual punishment in violation of the Eighth Amendment.  Specifically, Mr.

6    Cardwell alleges that each of the Defendants acted with deliberate indifference by

7    causing delay in provision of prescribed medication for Mr. Cardwell's lower back pain.

8    (*See generally* Compl. (Dkt. # 1); Resp. (Dkt. # 63).)

9       On or around November 26, 2007, Mr. Cardwell was transferred from Mule Creek

10   State Prison ("Mule Creek") to High Desert State Prison ("High Desert").  (Mot. at 3;

11   Resp. at 3.)  At the time of his transfer, Mr. Cardwell was taking a narcotic called

12   Gabapentin for his lower back pain.  (Resp at 3.)  Doctor Wesl Hashimoto, a physician at

13   Mule Creek, had prescribed Gabapentin (or Neurontin) to Mr. Cardwell on August 27,

14   2007, with an expiration date of February 11, 2008.  (Resp. at 3.)

15      In connection with Mr. Cardwell's transfer, on November 21, 2007, Nurse

16   Kettelhake, who worked at Mule Creek, filled out a "Confidential Medical Health

17   Information Transfer – Sending Institution" form ("Sending Form").  (Mot. at 3; Resp. at

18   3; Compl. Ex. A; Request for Judicial Notice ("RJN") (Dkt. # 56-2) Ex. A ("Sending

19   Form").)  On the Sending Form, under "Medications Prescribed," Nurse Kettelhake wrote

20   "See MAR," which the parties agree stands for Medication Administration Record.

21   (Sending Form.)  Nurse Kettelhake did not, however, list out on the Sending Form the

22   specific medications Mr. Cardwell was taking at the time of his transfer.  The parties

ORDER- 2

1  dispute whether or not the Medication Administration Record, referenced in the Sending

2  Form, was sent to High Desert, where Mr. Cardwell was transferred.  (*See* Mot. at 3

3  ("There is no dispute that Plaintiff's medical records were sent to High Desert . . . .");

4  Resp. at 3 ("The Plaintiff's medical records were not received on transfer from [Mule

5  Creek] . . . .").)[1]  The Medical Administration Record for Mr. Cardwell listed his

6  prescription for Gabapentin.  (Compl. Ex J ("Medical Admin. Record").)  The Sending

7  Form sent by Mule Creek shows a reviewing signature at High Desert of "J. Camacho

8  RN," with a date of "11/26/07" and time of "1530."  (Sending Form.")

9       On Mr. Cardwell's arrival at High Desert on November 26, 2007, Form 7277, also

10  known as the "Standardized BUS Screening Form," was filled out.  (Mot. at 3; Resp. at 6;

11  RJN Ex. B ("Bus Screening Form").)  Although the name "J. Camacho, RN" also appears

12  typed in the signature block at the bottom of the Standardized Bus Screening Form, the

13  parties agree that it was Nurse T. Reshke who actually filled out and signed the form.

14  (Mot. at 9; Resp. at 4.)  Upon Mr. Cardwell's arrival at High Desert, he was not given his

15  prescribed Gabapentin for his lower back pain.  (*See generally* Resp.)

16       On November 27, 2007, Mr. Cardwell submitted a "Health Care Services

17  Request Form" stating that he had not received his pain medications for his back

18  disability and identifying Gabapentin and Tylenol as desired medications.  (Resp. at 15;

19

20

21

22

---

[1] Defendants change their position in their reply brief, arguing instead that the Medical Administration Record was not sent to High Desert. (Reply at 3 ("Neither of these Defendants was aware of any physician's order for Gabapentin because, according to Plaintiff, the order form was not sent to High Desert.").)

ORDER- 3

1    Dkt # 61 at 22 ("Health Care Services Request Form").)  Then, on December 3, 2007,

2    Nurse Miler and Nurse Unterreiner saw Mr. Cardwell saw Mr. Cardwell and administered him

3    800 milligrams of Motrin apparently for pain in Mr. Cardwell's right hand.[2]  (*See* RJN Ex. C.)

4    Mr. Cardwell did not receive Gabapentin from either Nurse Miller or Nurse Unterreiner.  (*See*

5    *generally id.*; Mot.; Resp.)

6         On January 14, 2008, Doctor G.W. James saw Mr. Cardwell at High Desert in

7    response to a grievance submitted by Mr. Cardwell.  (Mot. at 4-5; Resp. at 5.)  According

8    to Doctor James' notes from that day, Dr. James examined Mr. Cardwell and found that

9    Mr. Cardwell had recently had surgery on his hand, but that the hand was "well healed

10   and patient can make a fist."  (RJN Ex. D ("Dr. James' January Notes").)  Nevertheless,

11   Dr. James requested an orthopedic consultation for Mr. Cardwell's hand.  (*Id.*)  Dr. James

12   also noted that Mr. Cardwell's gait was normal and without limp or evidence of pain.

13   (*Id.*)  With respect to Mr. Cardwell's back, Dr. James determined that Mr. Cardwell

14   experienced "discomfort all along the lumbar spine when pressed on" and had a history

15   of spinal disk disease.  As a result, Dr. James requested a nerve conduction study of Mr.

16   Cardwell's lower extremities.  (*Id.*)  Dr. James also prescribed "salsalate 500 milligrams

17   t.i.d.," but declined to prescribe Gabapentin until after the nerve conduction study was

18   completed.[3]  (*Id.*)

19

20        [2] It is unclear from the record why Mr. Cardwell received care on December 3, 2007.

21        [3] While confusing, it appears to the court that Mr. Cardwell did in fact receive
     Gabapentin at some point prior to his January 14, 2008 examination by Dr. James.  During his
22   deposition, Mr. Cardwell was asked at what point he began receiving Gabapentin after his arrival

1    Dr. James saw Mr. Cardwell again on February 14, 2008.  (*See* RJN Ex. E ("Dr.

2   James' February Notes").)  In his notes from the examination, Dr. James stated that Mr.

3   Cardwell had a history of lower back pain and that an orthopedic consultation was

4   pending.  Dr. James' examination revealed several areas of Mr. Cardwell's back where

5   movement resulted in pain.  Additionally, Dr. James noted that he did not have Mr.

6   Cardwell's unit health record or date of birth.  (*Id.*)  Dr. James decided to "reorder" the

7   Gabapentin at 600 milligrams nurse administered and also the "salicylate 500 mg one p.o.

8   b.i.d. for back pain . . . ."  (*Id.*)  Dr. James requested a follow-up with Mr. Cardwell in 60

9   days so that Dr. James could review Mr. Cardwell's health records for previous nerve

10  conduction studies and MRI scans.  (*Id.*)

## III.    LEGAL STANDARD

12   Summary judgment is properly granted when no genuine and disputed issues of

13  material fact remain, and when, viewing the evidence most favorably to the non-moving

14  party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56;

15  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the

16  burden of showing that there is no material factual dispute.  *Id.* at 323-25.  Therefore, the

17  court must regard as true the opposing party's evidence, if supported by affidavits or

18  other evidentiary material.  *Id.* at 324.  The court must draw all reasonable inferences in

19  favor of the party against whom summary judgment is sought.  *Matsushita Elec. Indus.*

20  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident &*

21

22  at High Desert, and Mr. Cardwell stated, "I believe it's the first or second week in December [of
    2008]."  (Dkt. # 56-3 at 5-6.)

ORDER- 5

1    *Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  Material facts which would preclude

2    entry of summary judgment are those which, under applicable substantive law, may affect

3    the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The

4    substantive law will identify which facts are material.  *Id.*

5         Where the moving party does not bear the burden of proof on an issue at trial, the

6    moving party may discharge its burden of production by either of two methods.  *Nissan*

7    *Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

8    The moving party may produce evidence negating an essential element of the non-

9    moving party's case, or, after suitable discovery, the moving party may show that the

10   non-moving party does not have enough evidence of an essential element of its claim or

11   defense to carry its ultimate burden of persuasion at trial.  *Id.*  If the moving party

12   discharges its burden by showing an absence of evidence to support an essential element

13   of a claim or defense, it is not required to produce evidence showing the absence of a

14   material fact on such issues, or to support its motion with evidence negating the non-

15   moving party's claim.  *Id.*  If the moving party shows an absence of evidence to support

16   the non-moving party's case, the burden then shifts to the non-moving party to produce

17   "specific evidence, through affidavits or admissible discovery material, to show that the

18   dispute exists."  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

19        If the moving party discharges its burden by negating an essential element of the

20   non-moving party's claim or defense, it must produce affirmative evidence of such

21   negation.  *Nissan*, 210 F.3d at 1105.  If the moving party produces such evidence, the

22

ORDER- 6

1  burden then shifts to the non-moving party to produce specific evidence to show that a

2  dispute of material fact exists.  *Id.*

3      If the moving party does not meet its initial burden of production by either

4  method, the non-moving party is under no obligation to offer any evidence in support of

5  its opposition.  *Id.*  This is true even though the non-moving party bears the ultimate

6  burden of persuasion at trial.  *Id.* at 1107.

7                    **IV.    DISCUSSION**

8      Mr. Cardwell claims that each Defendant acted with deliberate indifference

9  regarding his need for Gabapentin causing delay in his receipt of the medication and his

10 unnecessary suffering.  (*See generally* Resp.)  Defendants Kettelhake, Camacho, Miller,

11 Unterreiner, and James move for summary judgment on the ground that none of them

12 acted with deliberate indifference with regard to Mr. Cardwell's medical issues,

13 specifically Mr. Cardwell's pain in his lower back.  (Mot. at 9.)

14 **A.    Deliberate Indifference Claim**

15     The Constitution does not mandate comfortable prisons, but neither does it permit

16 inhumane ones.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The treatment a prisoner

17 receives in prison and the conditions under which he is confined are subject to scrutiny

18 under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

19     Deliberate indifference to serious medical needs violates the Eighth Amendment's

20 proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104

21 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

22 *grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A

1  determination of "deliberate indifference" involves an examination of two elements:  the

2  seriousness of the prisoner's medical need and the nature of the defendant's response to

3  that need.  *Id.*

4         A "serious" medical need exists if the failure to treat a prisoner's condition could

5  result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.*

6  (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or

7  patient would find important and worthy of comment or treatment; the presence of a

8  medical condition that significantly affects an individual's daily activities; or the

9  existence of chronic and substantial pain are examples of indications that a prisoner has a

10 "serious" need for medical treatment.  *Id.* at 1059-60 (citing *Wood v. Housewright*, 900

11 F.2d 1332, 1337-41 (9th Cir. 1990)).

12        A prison official is deliberately indifferent if he or she knows that a prisoner faces

13 a substantial risk of serious harm and disregards that risk by failing to take reasonable

14 steps to abate it.  *Farmer*, 511 U.S. at 837.  The prison official must not only "be aware

15 of facts from which the inference could be drawn that a substantial risk of serious harm

16 exists," but "must also draw the inference."  *Id.*  If a prison official should have been

17 aware of the risk, but was not, then the official has not violated the Eighth Amendment,

18 no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th

19 Cir. 2002).  To successfully allege "deliberate indifference," the prison official must act

20 with a "sufficiently culpable state of mind," which entails more than mere negligence, but

21 less than conduct undertaken for the very purpose of causing harm.  *Farmer*, 511 U.S. at

22 837.

ORDER- 8

1    Moreover, in a claim against a physician, a difference of medical opinion as to the

2    need to pursue one course of treatment over another is insufficient, as a matter of law, to

3    establish deliberate indifference.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

4    Plaintiff "must show that the course of treatment the doctors chose was medically

5    unacceptable under the circumstances and . . . that they chose this course in conscious

6    disregard of an excessive risk to plaintiff's health."  *Jackson v. McIntosh*, 90 F.3d 330,

7    332 (9th Cir. 1996) (citations omitted).

8    Once the prerequisites are met, it is up to the fact-finder to determine whether the

9    defendant exhibited deliberate indifference.  Such indifference may appear when prison

10   officials deny, delay or intentionally interfere with medical treatment, or it may be shown

11   in the way in which prison officials provide medical care.  *McGuckin*, 974 F.2d at 1062

12   (delay of seven months in providing medical care during which medical condition was

13   left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to

14   present colorable § 1983 claim).  If medical treatment is delayed rather than denied, the

15   delay generally amounts to deliberate indifference only if it caused further harm.

16   *Housewright*, 900 F.2d at 1335; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d

17   404, 407 (9th Cir. 1985) (per curiam).

18   With this legal framework in mind, the court examines Mr. Cardwell's claims

19   against the Defendants.

20   **B.      Nurse Kettelhake**

21   Nurse Kettlehake filled out Mr. Cardwell's Sending Form writing "See MAR"

22   (MAR stands for Medication Administration Record) on the form in the area for Mr.

1   Cardwell's prescriptions.  (Sending Form.)  Mr. Cardwell alleges that Nurse Kettelhake

2   acted with deliberate indifference towards his medical needs because he filled out the

3   Sending Form in summary fashion and did not send a "medication profile" sheet to High

4   Desert so that Mr. Cardwell could promptly receive his prescribed medication upon

5   transfer.  (Resp. at 13-14.)  Nurse Kettelhake moves for summary judgment arguing that

6   he did not act with deliberate indifference because it was not his responsibility, but the

7   pharmacy's responsibility, to attach the Medication Administration Record.  (Reply at 2.)

8   Nurse Kettelhake explained to Mr. Cardwell in interrogatory responses that it was not his

9   responsibility to attach the Medication Administration Record.  (*Id.*; Dkt. # 61 at 47

10   (Resp. to Interrogatory No. 7) ("It is the pharmacy's responsibility to attach a medical

11   administration record and 3 days of medications for transfers out of the institution.").)

12   Mr. Cardwell does not dispute the fact that it was not Nurse Kettelhake's responsibility to

13   attach this record.  (*See generally* Resp.)

14        Under the facts before this court, it cannot be said that Nurse Kettlehake acted

15   with deliberate indifference.  Although Nurse Kettelhake chose to reference the

16   Medication Administration Record as opposed to listing each and every medication

17   prescribed to Mr. Cardwell, Nurse Kettelhake did not deliberately ignore the medical

18   needs of Mr. Cardwell in doing so.  Certainly, Nurse Kettelhake could have been more

19   detailed in filling out the Sending Form, but such lack of detail does not rise to the high

20   level of deliberate indifference.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

21   ("Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does

22   not state a claim under § 1983") (internal quotations and citations omitted).  Here, Nurse

ORDER- 10

1  Kettelhake responded to Mr. Cardwell's needs by filling out the Sending Form and

2  referencing a separate document where Mr. Cardwell's prescriptions could be found.

3          Similarly, taking Mr. Cardwell's contention as true that no Medication

4  Administration Record was ever sent High Desert, it does not follow that Nurse

5  Kettelhake acted with a "sufficiently culpable state of mind" to constitute deliberate

6  indifference.  *Farmer*, 511 U.S. at 837.  Indeed, on the evidence before the court, it was

7  not Nurse Kettelhake's responsibility to attach the Medication Administration Record to

8  the materials sent to High Desert.  Thus, after filling out the Sending Form, Nurse

9  Kettelhake's duties were complete, and Nurse Kettelhake had no way of knowing that the

10  Medication Administration Record would not be attached by the pharmacy.  Without

11  knowledge of the risk of harm, Nurse Kettelhake's actions could not constitute deliberate

12  indifference.  *See Farmer*, 511 U.S. at 837.  Accordingly, the court grants summary

13  judgment with respect to Nurse Kettelhake.

14  **C.      Doctor James**

15          Mr. Cardwell contends that Dr. James was deliberately indifferent to his medical

16  needs because Dr. James did not review Mr. Cardwell's medical records and treated Mr.

17  Cardwell as a "nuisance."  (Resp. at 16-17.)  Dr. James saw Mr. Cardwell twice.  Both

18  times Dr. James examined Mr. Cardwell, including Mr. Cardwell's back, and provided

19  medical treatment for Mr. Cardwell.  On the evidence before the court, there has been no

20  showing of deliberate indifference by Dr. James.

21          At the first examination, on January 14, 2008, Dr. James determined Mr. Cardwell

22  had pain in his back and a history of disc disease, but also that Mr. Cardwell's gait was

ORDER- 11

1  normal and that he could walk without pain.  Dr. James treated Mr. Cardwell by ordering

2  a nerve conduction study and prescribing 500 milligrams of salsalate.  (Dr. James'

3  January Notes.)  Importantly, after Dr. James examined and interviewed Mr. Cardwell,

4  Dr. James chose not to order Gabapentin until after the nerve study.  Dr. James' action,

5  here constitutes an informed medical decision, made after having discussed possible

6  medications with Mr. Cardwell and certainly becoming aware of Mr. Cardwell's desire

7  for Gabapentin.  That Dr. James did not prescribe Gabapentin to Mr. Cardwell despite the

8  fact that a preceding doctor had given Mr. Cardwell such a prescription does not amount

9  to deliberate indifference.  *See Sanchez*, 891 F.2d at 242 (difference of medical opinion

10  as to the need to pursue one course of treatment over another is insufficient, as a matter of

11  law, to establish deliberate indifference).   Here, Mr. Cardwell must show that Dr. James'

12  course of treatment "was medically unacceptable under the circumstances."  *McIntosh*,

13  90 F.3d at 332.  And, no such showing has been made.

14        Similarly, with respect to the second examination, on February 14, 2008, Dr.

15  James determined that Mr. Cardwell has lower back pain, but did not find signs of "true

16  Neuropathic pain . . . ."  (Dr. James' February Notes.)  Dr. James treated Mr. Cardwell by

17  prescribing 500 milligrams of salicylate and 600 milligrams of Gabapentin.  (*Id.*)  Dr.

18  James further told Mr. Cardwell that the Gabapentin prescription would last only 60 days

19  and that the Gabapentin was for neuropathic pain and not ordinary pain and that there

20  was no evidence of neuropathy.  (*Id.*)  A follow-up in 60 days was ordered.  (*Id.*)  Despite

21  this examination and treatment, Mr. Cardwell argues that Dr. James should have

22  reviewed his medical records.  Even if Dr. James should have taken such steps, as a

ORDER- 12

1 │ treating physician, Dr. James' failure to do so does not rise to the level of deliberate

2 │ indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate

3 │ indifference is a high legal standard.  A showing of medical malpractice or negligence

4 │ [by a treating physician] is insufficient to establish a constitutional deprivation under the

5 │ Eighth Amendment.").  Instead, Dr. James' examination and treatment of Mr. Cardwell,

6 │ and in particular Dr. James' efforts to provide follow-up treatment, demonstrate that Dr.

7 │ James did not act with deliberate indifference towards Mr. Cardwell's medical needs.

8 │ Accordingly, the court grants summary judgment with respect to Mr. Cardwell's claims

9 │ against Dr. James.

10 │ **D.     Doctor Colletti**

11 │      The parties agree that Dr. Colletti should be dismissed from this action because he

12 │ was not a proper defendant.  (Mot. at 5; Resp. at 9.)  Accordingly, the court grants

13 │ summary judgment with respect to any claims against Dr. Colletti.

14 │ **E.     Nurse Camacho, Nurse Miller, and Nurse Unterreiner**

15 │      Regarding Defendants Camacho, Miller, and Unterreiner, the court declines to

16 │ grant summary judgment.  Although each of these defendants argue that they did not act

17 │ with deliberate indifference (*see generally* Mot.), viewing the evidence in a light most

18 │ favorable to Mr. Cardwell, the court finds that none of these defendants have carried their

19 │ burden of demonstrating that no issues of material fact remain.

20 │      First, Nurse Camacho argues that she had no role in Mr. Cardwell's healthcare or

21 │ treatment, and therefore could not have acted with deliberate indifference.  (Mot. at 9.)

22 │ Nurse Camacho's signature, however, appears on the Sending Form as the person who

ORDER- 13

1 │ reviewed that form upon its arrival at High Desert.  Thus, drawing reasonable inferences

2 │ in favor of Mr. Cardwell, it appears Nurse Camacho would have reviewed the Sending

3 │ Form, which indicated that Mr. Cardwell's prescribed medications would be found in the

4 │ attached Medication Administration Record.  Again, viewing the evidence in Mr.

5 │ Cardwell's favor, Nurse Camacho, upon reviewing the Sending Form, would have

6 │ become aware of the existence of Mr. Cardwell's prescriptions, affording her knowledge

7 │ of the risk to Mr. Cardwell.  As the record is unclear as to Nurse Camacho's response to

8 │ reviewing the Sending Form, the court cannot determine whether she acted with

9 │ deliberate indifference.  Accordingly, the court declines to grant summary judgment with

10 │ respect to Nurse Camacho.

11 │         Second, with respect to Nurse Miller and Nurse Unterreiner, the court finds the

12 │ factual record before it insufficient for summary judgment.  Nurse Miller and Nurse

13 │ Unterreiner argue that because they gave Mr. Cardwell 800 milligrams of Motrin for

14 │ pain, they did not act with deliberative indifference. (Mot. at 4.)  Mr. Cardwell's claim,

15 │ however, is that Nurse Miller and Nurse Unterreiner ignored Mr. Cardwell's statement

16 │ that Gabapentin was prescribed for him.  Mr. Cardwell alleges that he made Nurse Miller

17 │ and Nurse Unterreiner aware of his prescription for Gabapentin during his meeting with

18 │ them on December 3, 2007, and this assertion is uncontroverted. (Resp. at 15.)

19 │ Moreover, it is reasonable to infer that Nurse Miller and Nurse Unterreiner would have

20 │ seen Mr. Cardwell's Health Care Services Request Form which listed Gabapentin as one

21 │ of his medications, because Mr. Cardwell submitted that form on November 27, 2007,

22 │ seven days prior to his meeting with Nurse Miller and Nurse Unterreiner.  (Health Care

ORDER- 14

1    Services Request Form.)  With Nurse Miller and Nurse Unterreiner aware of Mr.

2    Cardwell's prescription for Gabapentin, the record before the court is entirely void of any

3    action taken by either Nurse Miller or Nurse Unterreiner in response.  (*See generally*

4    Mot.; Reply.)  Mr. Cardwell apparently received Gabapentin soon after his December 3,

5    2007 meeting with Nurse Miller and Nurse Unterreiner, but this fact does not necessarily

6    ensure that it was the defendants who took action to provide Mr. Cardwell with the

7    Gabapentin.  Accordingly, Nurse Miller and Nurse Unterreiner have failed to show that

8    no issue of material fact exists as to whether they acted with deliberate indifference in

9    response to Mr. Cardwell's request for Gabapentin.

10    **V.    CONCLUSION**

11    Based on the foregoing, the court GRANTS in part and DENIES in part,

12    Defendants' motion for summary judgment (Dkt. # 56).  The court GRANTS summary

13    judgment with respect to Defendants Nurse Kettelhake, Doctor Colletti, and Doctor

14    James and DENIES summary judgment with respect to Defendants Nurse Camacho,

15    Nurse Miller, and Nurse Unterreiner.

16    The court further ORDERS as follows:

17    1.    Discovery in this matter will close 90 days from the date of this order.

18    2.    Within 30 days from the close of discovery, the parties shall file any remaining
        dispositive motions.  The non-moving party with respect to dispositive motions
19      shall have 28 days to file any responsive brief; and the moving party shall have 14
        days for its reply.

20

21

22

ORDER- 15

1   3.   After receiving dispositive motions, if appropriate, the court will set a schedule for trial.

2

3      Dated this 30th day of March, 2012.

4

5

     The Honorable James L. Robart

6      U.S.  District Court Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 16