UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER W. CARDWELL,

Plaintiff,

v.

A. KETTELHAKE, et al.,

Defendants.

CASE NO. 2:08-CV-01006-JLR

ORDER ON PLAINTIFF'S
MOTION FOR APPOINTMENT
OF COUNSEL, DEFENDANTS'
SECOND MOTION FOR
SUMMARY JUDGMENT, AND
PLAINTIFF'S MOTION FOR AN
EXTENSION OF TIME TO
RESPOND

## I.    INTRODUCTION

Before the court are:  (1) *pro se* Plaintiff Christopher W. Cardwell's sixth motion seeking the appointment of counsel (Dkt. # 77), (2) Defendants Nurse Virginia Unterreiner, Nurse Judi Damm (formerly Camacho), Nurse Practitioner Mary Miller, and Nurse Thomas Reshke's motion for summary judgment (Dkt. # 78), and (3) Mr. Cardwell's motion for an extension of time in which to file a response to Defendants' motion for summary judgment (Dkt. # 80).  The court has considered all three motions, all submissions filed in support and opposition thereto, the remainder of the record, and

1   the relevant law.  Being fully advised, the court DENIES Mr. Cardwell's motion to

2   appoint counsel, GRANTS Defendants' motion for summary judgment, and GRANTS

3   Mr. Cardwell's motion for an extension of time in which to file his response.

4                                **II.      BACKGROUND**

5         Mr. Cardwell is an inmate incarcerated within the California Department of

6   Corrections and Rehabilitation.  Mr. Cardwell complains that he was subjected to cruel

7   and unusual punishment in violation of the Eighth Amendment when he was transferred

8   on November 26, 2007, from Mule Creek State Prison ("MCSP") to High Dessert State

9   Prison ("HDSP").  Specifically, he claims that between November 26, 2007 and

10   sometime in early to mid December 2007, Defendants at HDSP acted with deliberate

11   indifference in failing to ensure that he received a particular type of pain medication

12   (Gabapentin) that he had been previously prescribed for treatment of lower back pain

13   while he was incarcerated at MCSP.

14         At the time of his transfer, Mr. Cardwell was taking Gabapentin for lower back

15   pain. (7/2/10 Resp. (Dkt. # 63) at 3.)  Doctor Wesl Hashimoto, a physician at MCSP had

16   prescribed Gabapentin to Mr. Cardwell on August 27, 2007, with a prescription

17   expiration of February 11, 2008.  (*Id.*)  In connection with Mr. Cardwell's November 26,

18   2007 transfer, Nurse Kettlehake, who worked at MCSP, filled out a "Confidential

19   Medical Health Information Transfer—Sending Institution" form ("Sending Form").

20   (3/30/12 SJ Ord. (Dkt. # 76) at 2.)  On the Sending Form, under "Medications

21   Prescribed," Nurse Kettlehake wrote "See MAR," which stands for Medication

22   Administration Record.  (*Id.*)  The MAR listed Mr. Cardwell's prescription for

ORDER- 2

Gabapentin.  (*Id.* at 3.)  Nurse Kettlehake did not, however, specify on the Sending Form the particular medications Mr. Cardwell was prescribed at the time of his transfer.  (*Id.* at 2.)  The parties dispute whether the MAR, referenced in the Sending Form, arrived at MCSP during Mr. Cardwell's transfer.  (*See id.* at 3, n.1.)[1]

**A.  Nurse Camacho**

Nurse Camacho has testified that on November 26, 2007, she was working in Receiving and Release and charged with acknowledging receipt of the "Sending Forms" from other institutions as inmates arrived.  (*See* Camacho Decl. (Dkt. # 78-4) ¶ 4.)  Mr. Cardwell complains that upon his November 26, 2007 arrival at HDSP, Nurse Camacho received, reviewed, and signed the "Sending Form" (Form 7371) but failed to properly document or follow up with respect to his medical needs.  (Resp. at 1-2.)  Nurse Camacho, however, has testified that she had no involvement in filling out Mr. Cardwell's "Sending Form" and that by signing it, she was simply acknowledging HDSP's receipt of the form.  (*See id.* ¶¶ 6-7.)

Nurse Camacho has testified that she did not see or interview Mr. Cardwell upon his arrival at HDSP.  (*Id.* ¶ 8.)  In receiving the Sending Form, she was instructed to review it only to ascertain if the prisoner/patient was diabetic.  (*Id.* ¶¶ 7-8.)  If, like Mr. Cardwell, the prisoner/patient was not diabetic, then she was supposed to simply sign the form and forward it to the nurse conducting the second step in the health screening

---

[1] The court previously granted summary judgment to Nurse Kettlehake with respect to Mr. Cardwell's claim against him.  (3/30/12 SJ Ord. at 9-11.)

process—the face-to-face screening examination with the prisoner/patient. (*Id.*) She fulfilled the role she was assigned on November 26, 2007. (*Id.* ¶ 8.) Nurse Camacho has testified that at no time was she deliberately indifferent to Mr. Cardwell's medical needs. (*Id.* ¶ 9.)

Mr. Cardwell states that he disputes Nurse Camacho's testimony (Resp. (Dkt. # 81) at 18), but provides no competent evidence in support of his dispute except for his own declaration.[2] In his declaration, Mr. Cardwell baldly asserts with no foundation that Nurse Camacho "was responsible for the completion of the [Sending Form]" and that "[t]his service/duty was not performed by [Nurse Camacho] for plaintiff." (Cardwell Decl. re: Camacho (Dkt. # 81 at 46) ¶ 5.) Mr. Cardwell also states that he "believe[s]" and "allege[s]" that Nurse Camacho "acted intentionally" and "had knowledge of [his] condition." (*Id.* ¶ 6.) Finally, Mr. Cardwell "contend[s]" in his declaration that Nurse Camacho "had knowledge of [his] serious medical needs and the treatment ordered by a physician" but "acted with deliberate indifference to [his] serious medical needs." (*Id.* ¶ 7.) Allegations, beliefs, contentions, or conclusory statements, which lack foundation, are insufficient to create a genuine issue of material fact with respect to summary

---

[2] Mr. Cardwell's citations to certain exhibits attached to his amended complaint are not probative with respect to his assertion of a disputed factual issue. Indeed, Exhibit A supports Nurse Camacho's position. The form recites that it is "completed by sending institution" and "reviewed by receiving institution." (*See* Am. Compl. (Dkt. # 45) Ex. A.) Mr. Cardwell's citations to the court's prior order on summary judgment (*see generally* 3/30/12 SJ Ord.) also do not suffice. The court's prior order was issued before entry of Nurse Camacho's declaration at issue here.

1   judgment.  Other than these insufficient declaratory statements, Mr. Cardwell offers no

2   other evidence to refute Nurse Camacho's declaration.

3   **B.  Nurse Reshke**

4   On November 26, 2007, Nurse Reshke conducted a screen examination of Mr.

5   Cardwell upon his arrival at HDSP.  (Reshke Decl. (Dkt. # 78-3) ¶ 5; Cardwell Decl. re:

6   Reshke (Dkt # 81 at 43) ¶ 5.)  Part of the screening exam included filling out CDCR

7   Form 7277 by asking Mr. Cardwell questions and eliciting responses from him.  (Reshke

8   Decl. ¶ 6; Cardwell Decl. re:  Reshke ¶ 6.)[3]  During the course of the examination, Nurse

9   Reshke asked Mr. Cardwell if he was currently taking any medications.  (Reshke Decl.

10  ¶ 7; *see* Cardwell Decl. re:  Reshke ¶ 8.)  Accordingly to Nurse Reshke, Mr. Cardwell

11  indicated that he was not currently taking any medications and had no apparent

12  complaints, and so Nurse Reshke circled "no" on Form 7277 for Item No. 3 and did not

13  make any medical referral on November 26, 2007.  (Reshke Decl. ¶¶ 7-8, Ex. C.)  Mr.

14  Cardwell, however, testifies that he told Nurse Reshke that he was currently on

15  medication and that he experienced chronic pain in his lower back.  (Cardwell Decl. re:

16  Reshke ¶¶ 8, 13.)  Mr. Cardwell also testifies that Nurse Reshke "engaged in jokes and

17  conversation with staff" while Nurse Reshke was conducting Mr. Cardwell's screening

18

19

20  [3] Mr. Cardwell asserts in his opposition to Defendants' separate statement of undisputed
21  facts (Resp. at 14) that he disputes that Nurse Reshke duties included "filing [sic] out CDCR
    form 7277 by asking Plaintiffs questions and eliciting a response . . ." (Resp. at 14), but based on
22  statements in his sworn declaration to the contrary there is no basis for his assertion of a disputed
    issue of fact here.  (*See* Cardwell Decl. re:  Reshke ¶ 6.)

1  examination, and that Nurse Reshke repeated some of the questions that he was asking

2  Mr. Cardwell during the examination.  (*Id.* ¶ 7.)

3  **C.  Nurse Unterreiner**

4  On November 27, 2007, Mr. Cardwell submitted a "sick call slip" or Form 7362

5  stating that he had not received his pain medications for his back.  (*See* Unterreiner Decl.

6  (Dkt. # 78-2) ¶ 6; Cardwell Decl. re:  Unterreiner (Dkt. # 81 at 38) ¶ 6.)  On December 3,

7  2007, Mr. Cardwell approached Nurse Unterreiner and complained regarding his lack of

8  pain medication.  (Unterreiner Decl. ¶ 4.)  He also testifies that he specifically told Nurse

9  Unterreiner that he had been given a prescription for Gabapentin.  (Cardwell Decl. re:

10  Unterreiner ¶ 9.)  Nurse Unterreiner testifies that she reviewed Mr. Cardwell's unit health

11  records and saw that he had been prescribed Tylenol and Gabapentin. [4]  (Unterreiner

12  Decl. ¶ 4.)  She notified the on-call nurse practitioner, Mary Miller, regarding Mr.

13  Cardwell's complaints that he had not been receiving his pain medication. [5]  (*Id.*)  Nurse

14  Practitioner Miller issued a telephone order for Motrin 800 milligrams and also ordered a

15  follow-up referral for Mr. Cardwell to the doctor with respect to obtaining Gabapentin.

16  (*Id.* ¶¶ 4, 6.)  Nurse Unterreiner immediately copied Nurse Practitioner Miller's order to

17

18

19  [4] The parties are in dispute regarding whether Mr. Cardwell or Nurse Unterreiner noted on Form 7362 that Mr. Cardwell was seeking Gabapentin.  (*Compare* Unterreiner Decl. ¶¶ 6-7

20  *with* Resp. at 17.)  This disputed issue, however, is not material with respect to the court's resolution of Defendants' motion for summary judgment.

21  [5] Mr. Cardwell asserts in his opposition to Defendants' separate statement of undisputed facts (Resp. at 16) that he disputes that Nurse Unterreiner called Nurse Practitioner Miller on

22  December 3, 2007, however, the evidence that Mr. Cardwell offers in his attempt to dispute this fact either lacks foundation or does not supports his contention.

ORDER- 6

1   the pharmacy.  (*Id.* ¶ 5, Ex. A.)  She also testified that she referred Mr. Cardwell to the

2   doctor's line (*id.* ¶ 5, Ex. A), although Mr. Cardwell disputes this fact.  (Resp. at 16-17.) [6]

3   **D.  Nurse Practitioner Miller**

4        On December 3, 2007, Nurse Practitioner Mary Miller was "on-call" with respect

5   to HDSP.  (Miller Decl. (Dkt. # 78-5) ¶ 10.)  She received a call from Nurse Unterreiner

6   informing her that Mr. Cardwell had complained of pain to his wrist.  (*Id.*)  In response,

7   Nurse Practitioner Miller issued a telephone order for Motrin 800 milligrams.  (*Id.*)

8   Nurse Practitioner Miller did not order any other pain medications for Mr. Cardwell

9   because she did not have his unit health records and therefore could not review them.

10  (*Id.*)  She did, however, order a follow-up appointment with a physician.  (*Id.*)

11       Nurse Practitioner Miller does not recall that Nurse Unterreiner informed her that

12  Mr. Cardwell had requested Gabapentin or that he complained of back pain.  (*Id.* ¶ 11.)

13  However, even if she had been so informed she would not have been allowed to issue a

14  telephone order for Gabapentin without first personally seeing Mr. Cardwell or having

15  Mr. Cardwell examined by a physician.  (*Id.*)  Nurse Practitioner Miller testifies that had

16  she known Mr. Cardwell has requested Gabapentin or complained of back pain she would

17  have made a referral to a physician, which is, in fact, what she did in this case.  (*Id.*)

18

19

20       [6] Mr. Cardwell also states in his Opposition to Defendants' Separate Statement of
21  Undisputed Facts that he disputes other portions of Nurse Unterreiner's testimony concerning her
    involvement with his treatment.  (*See* Resp. at 16-17.)  However, Mr. Cardwell has either not
22  offered competent or probative evidence in support of his contentions, or the factual disputes he
    asserts are not material to the court's resolution of Defendants' motion for summary judgment.

1        Mr. Cardwell eventually received Gabapentin by at least December 19, 2007.  (*Id.*

2 ¶ 12.)  However, he also testified in his deposition that he received Gabapentin in

3 approximately the first or second week of December, 2007.  (Reager Decl. (Dkt. # 56-3)

4 Ex. 1 (attaching Cardwell Dep.) at 27-28.)  In any event, Mr. Cardwell has acknowledged

5 that he did not have to go very long at HDSP without Gabapentin.[7]  (*Id.* at 28.)

6   **E.  Procedural History**

7        Mr. Cardwell originally filed this action on May 8, 2008.  (*See* Compl. (Dkt. # 1).)

8 He has moved for the appointment of counsel on five prior occasions (*see* Dkt. ## 16, 28,

9 43, 49, 60), and the court has denied each such motion (*see* Dkt. ## 33, 46, 68).  Mr.

10 Cardwell has renewed his motion for the appointment of counsel once again.  (*See* Mot.

11 to Appoint (Dkt. # 77).)

12        On May 28, 2010, Defendants filed their first motion for summary adjudication

13 (*see* 1st SJ Mot. (Dkt. # 56)), which the court granted in part and denied in part (*see*

14

---

15    [7] Specifically, Mr. Cardwell's deposition testimony on this point was as follows:

16    Q:  How long after that did you start receiving the Gapapentin, approximately?
    A:  I could tell you the exact date if you want me to.

17    Q:  It's okay, I have the records, so I can look at the –
    A:  Okay.

18    Q:  Just approximate.
    A:  I believe it's the first or second week in December.

19    Q:  Of that year?
    A:  Yes, sir.

20    Q:  Of '07?
    A:  Yes, sir.

21    Q:  Okay.  So you weren't very long without the Gabapentin?
    A:  No, sir.

22 (Reager Decl. Ex. 1 at 27-28.)

ORDER- 8

1    3/30/12 SJ Ord.).  The court also issued an order setting forth a schedule for any

2    remaining discovery and dispositive motions.  (*Id.* at 15.)  Defendants timely filed their

3    second motion for summary judgment.  (*See* 2d SJ Mot. (Dkt. # 78).)

### III.    ANALYSIS

#### A.  Motion to Appoint Counsel

6        Mr. Cardwell has filed six motions seeking the appointment of counsel.  (*See, e.g.*,

7    Dkt. ## 16, 28, 43, 49, 60, 77.)  Generally, a person has no right to counsel in civil

8    actions.  *See Plamer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v.*

9    *Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)).  A court may under "exceptional

10   circumstances," however, appoint counsel for indigent civil litigants pursuant to 28

11   U.S.C. § 1915(e)(1).  *Id.* (citing *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103

12   (9th Cir. 2004)).  When determining whether "exceptional circumstances" exist, the court

13   must consider "the likelihood of success on the merits as well as the ability of the

14   petitioner to articulate his claims *pro se* in light of the complexity of the legal issues

15   involved."  *Id.* (*Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).  Neither of these

16   considerations is dispositive, and instead they must be viewed together.  *Id.*

17       Mr. Cardwell has failed to show exceptional circumstances warranting the

18   appointment of counsel.  He has neither demonstrated a likelihood of success on the

19   merits[8] nor shown that, in light of the complexity of the legal issues involved, he is

---

[8] Indeed, the closest that Mr. Cardwell comes to even addressing the likelihood of his success on the merits is when he states that "his case appears to have merit."  (*See* Mot. to Appoint at 3.)

1  unable to articulate his claims *pro se*.  (*See generally* Mot. to Appoint.)  The legal issues

2  surrounding Mr. Cardwell's 42 U.S.C. § 1983 claim are not complex.  Nevertheless, just

3  as he did in his earlier motions, Mr. Cardwell relies in part on his limited education.  (*Id.*

4  at 1.)  Although Mr. Cardwell may not have completed his high school education, he is

5  literate and capable of articulating his claims in this matter (as is demonstrated by his

6  many filings in this action—including his response to Defendants' present motion for

7  summary judgment).

8          As the court has stated before (*see, e.g.*, 9/14/10 Order (Dtk. # 68) at 2-3), other

9  problems asserted by Mr. Cardwell, such as difficulty understanding procedural rules,

10 responding to filings by party opponents, locating medical experts, and cross-examining

11 witnesses, are largely concerns that any *pro se* litigant would face.  *See Wood v.*

12 *Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990) (holding that, in absence of

13 exceptional circumstances, court did not abuse its discretion in refusing to appoint

14 counsel for inmate in connection with civil rights action alleging deliberate indifference

15 to medical needs and denial of meaningful access to the courts).

16         Further, Mr. Cardwell's assertion that he has limited access to the prison's law

17 library does not establish exceptional circumstances.  *See Aytch v. Sablica*, No. 2:08–cv–

18 01773–RLH–VCF, 2013 WL 1182667, at *4 (D. Nev. Mar. 20, 2013) (court finds that

19 prison's policy which required prisoner to submit a print request to check out a case or

20 receive other legal assistance, and which limited access to the prison law library, did not

21 amount to exceptional circumstances.)  This is particularly so when the court has

22

ORDER- 10

1    demonstrated its willingness to grant extensions of time when requested.  (*See infra*

2    § III.B.)  Accordingly, the court denies his motion to appoint counsel (Dkt. # 77).

3    **B.   Motion for an Extension of Time**

4          Mr. Cardwell requested an extension of time with respect to filing his opposition

5    to Defendants' second motion for summary judgment.  (Mot. (Dkt. # 80).)  Under the

6    court's scheduling order, Mr. Cardwell's opposition was due 28 days following the filing

7    of Defendants' second motion for summary judgment.  (3/30/12 SJ Ord. at 15.)

8    Defendants filed their second motion for summary judgment on July 27, 2012.  (*See* Dkt.

9    # 78.)  Thus, Mr. Cardwell's opposition was due on August 24, 2012, but he actually

10   filed it three days late on August 27, 2012.  (*See* Dkt. # 81.)  Mr. Cardwell asserts that he

11   injured his arm on July 17, 2012, and he received a cast on July 23, 2012, which limited

12   his ability to write.  (Mot. at 2.)  Mr. Cardwell has demonstrated good cause for an

13   extension of the deadline.  Further, Defendants filed no opposition to Mr. Cardwell's

14   motion and have not shown any prejudice with respect to such a modest extension of the

15   deadline.  Accordingly, the court GRANTS Mr. Cardwell's motion and deems his

16   opposition to Defendants' motion for summary judgment to be timely.

17   **C.  Defendants' Second Motion for Summary Judgment**

18        **1.   Standards**

19        Summary judgment is appropriate if the evidence, when viewed in the light most

20   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

21   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

22   P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

ORDER- 11

1  477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing

2  there is no genuine issue of material fact and that he or she is entitled to prevail as a

3  matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden,

4  then the non-moving party "must make a showing sufficient to establish a genuine

5  dispute of material fact regarding the existence of the essential elements of his case that

6  he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.

7         The treatment a prisoner receives in prison and the conditions under which he is

8  confined are subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509

9  U.S. 25, 31 (1993).  To maintain an Eighth Amendment claim based on prison medical

10  treatment under 42 U.S.C. § 1983, an inmate must show "deliberate indifference to

11  serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*,

12  974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v.*

13  *Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate

14  indifference" involves an examination of two elements:  (1) the seriousness of the

15  prisoner's medical need and (2) the nature of the defendant's response to that need.  *Id.*

16         With respect to the first element, a "serious" medical need exists if the failure to

17  treat a prisoner's condition could result in further significant injury or the "unnecessary

18  and wanton infliction of pain."  *Id.* (citing *Estelle*, 429 U.S. at 104).  The existence of an

19  injury that a reasonable doctor or patient would find important and worthy of comment or

20  treatment; the presence of a medical condition that significantly affects an individual's

21  daily activities; or the existence of chronic and substantial pain are indications that a

22  prisoner has a "serious" need for medical treatment.  *Id.* at 1059-60 (citing *Wood*, 900

F.2d at 1337-41).  For purposes of this motion, Defendants have not seriously challenged the existence of this element.  (*See generally* 2d SJ Mot.)

With respect to the second element, a prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  *Id.*  In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."  *McGuckin*, 974 F.2d at 1060.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Under the foregoing standard, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, will rise to the level of medical mistreatment under the Eighth Amendment.  *Estelle*, 429 U.S. at 105; *Broughton v. Cutter Lab.*, 622 F.2d 458, 460 (9th Cir. 1980); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."  *McGuckin*, 974 F.2d at 1060.  In addition, if medical treatment is delayed rather than denied, the delay generally amounts to deliberate indifference only if it causes further harm.  *Wood*, 900 F.2d at 1335; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *Frost v. Agnos,* 152 F.3d 1124, 1130 (9th Cir.

1998) (negligent delays in administering pain medication do not violate the Constitution).

Finally, a plaintiff's disagreement with the type and adequacy of the medical treatment or

pain medication that he is provided does not constitute an Eighth Amendment violation

so long as the treatment provided was medically acceptable under the circumstances.

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Lua v. LAC CSP Medical Offices*,

No. CV 10-3548 DOC (JCG), 2011 WL 1743260, at *3 (C.D. Cal Mar. 23, 2011) ("[T]he

Ninth Circuit has squarely held that prisoners are not entitled to their choice of pain

medication.") (citing unpublished cases).  As the Ninth Circuit has observed, deliberate

indifference is "not an easy test" for a plaintiff to satisfy.  *Hallett v. Morgan*, 296 F.3d

732, 745 (9th Cir. 2002).  With this legal framework in mind, the court examines Mr.

Cardwell's claims of deliberate indifference against Defendants.

### 2. Nurse Camacho[9]

        In her declaration, Nurse Camacho has testified that she "dated [the Sending

Form] and signed [her] name to it simply to acknowledge receipt by HDSP."  (Camacho

Decl. ¶ 6.)  Her only other duty was to review the form to ascertain if Mr. Cardwell was

diabetic.  (*Id.* ¶ 7.)  Nurse Camacho performed these duties.  (*See id.* ¶¶ 6-8.)  She did not

see or interview Mr. Cardwell on the day he was transferred to HDSP.  (*Id.* ¶ 8.)

Although Mr. Cardwell baldly asserts that he "disputes that [Nurse] Camacho was simply

acknowledging receipt of the [Sending Form]" (Resp. at 2), he has not provided any

-----

        [9] The court initially denied summary judgment with respect to Nurse Camacho.  (3/30/12 SJ Ord. at 13-14.)  At the time, however, the court did not have Nurse Camacho's declaration before it.

1  evidence to raise a genuine issue of material fact on this point.  Further, the Sending

2  Form that Nurse Camacho signed indicates that Mr. Cardwell's prescriptions were listed

3  in his MAR, and Mr. Cardwell's MAR did in fact state that he had a prescription for

4  Gabapentin.  (3/30/12 SJ Ord. at 2.)  There is, however, no evidence in the record that

5  Nurse Camacho knew that Mr. Cardwell's MAR had not reached HDSP at the time of

6  Mr. Cardwell's transfer, or that those in charge of his screening examination would

7  remain unaware of his prescription.[10]  At most, Mr. Cardwell has alleged a paperwork

8  error or bureaucratic snafu and not deliberate indifference by Nurse Camacho.  Such

9  errors do not meet the level of a Constitutional violation.  *See, e.g.*, *Sherman-Bey v. Cate*,

10  No. CV 12-9281 RGK (RZ), 2012 WL 6864600, at *4 (C.D. Cal. Dec. 18, 2012)

11  ("Plaintiff's own descriptions further undermine the notion that he was the victim of

12  knowing, deliberate neglect or abuse rather than mere negligence and bureaucratic foul-

13  ups."); *Mantigal v. Cate*, No. CV 10-1503-DMG (MLG), 2010 WL 3365735, at *6 (C.D.

14  Cal. May 24, 2010) ("At most, [Plaintiff] demonstrate[s] that at the time of [his] transfer,

15  the medical staff at [the first prison] did not communicate with the medical staff at [the

16  second prison] regarding Plaintiff's hand injury[,]" but "[t]here is nothing to suggest that

17  any [defendant] . . . knew of an purposely disregarded or failed to respond to Plaintiff's

18  hand injury and pain [for five days].").

19

20  ───────────────

21  [10] As noted above, there is a dispute in the record concerning whether or when Mr.
Cardwell's MAR reached HDSP.  However, even assuming, as Mr. Cardwell asserts, that it did

22  not, the court's decision on summary judgment would remain the same.  Thus, the factual dispute
is not material to Defendants' motion for summary judgment.

1        Based on Nurse Camacho's stated duties and complete lack of direct interaction

2   with Mr. Cardwell on November 26, 2007, the court cannot conclude that Nurse

3   Camacho acted with deliberate indifference with respect to Mr. Cardwell's medical

4   needs.  Indeed, based on the record before the court, there is no evidence that Nurse

5   Camacho was even aware that Mr. Cardwell had not received the medication he had

6   previously been prescribed at MCSP after his transfer to HDSP.  Accordingly, the court

7   grants Defendants' motion with respect to Nurse Camacho.

8        **3.   Nurse Reshke**

9        The record is less straightforward with respect to Nurse Reshke.  There is a

10  disputed issue of fact concerning Nurse Reshke's actions with respect to Mr. Cardwell's

11  medical care on the day of his transfer from MCSP to HDSP.  Nurse Reshke insists that

12  during his screening examination of Mr. Cardwell on November 26, 2007, Mr. Cardwell

13  had no apparent complaints and stated that he was not taking any medications.  (Reshke

14  Decl. ¶¶ 7-8.)  Nurse Reshke testifies that he filled out Form 7277 consistent with Mr.

15  Cardwell's responses, circled "no" on Form 7277 for Item No. 3 regarding current

16  medications, and did not make any medical referral with respect to Mr. Cardwell.  (*Id.*

17  ¶¶ 7-8, Ex. C.)  Mr. Cardwell, however, insists that he told Nurse Reshke that he was

18  currently taking medication for chronic lower back pain.  (Cardwell Decl. re: Reshke

19  ¶¶ 8, 13.)  Mr. Cardwell also testifies that Nurse Reshke "engaged in jokes and

20  conversation with staff" while he was also conducting Mr. Cardwell's screening

21  examination.  (*Id.* ¶ 7.)

22

1    Even assuming that Mr. Cardwell's version of events is true, however, he has

2  failed to establish that Nurse Reshke exhibited deliberate indifference toward his medical

3  needs.  Mr. Cardwell asserts that Nurse Reshke "did not competently circle the correct

4  response."   (2d SJ Mot. Ex. E (attaching excerpts of Cardwell Dep.) at 77.)  A lack of

5  competence, however, is insufficient to establish deliberate indifference.  The Ninth

6  Circuit has been clear on this issue:  Even grossly negligent conduct will not support a

7  claim.  *See Toguchi v. Soon Hwang Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (*citing

8  Wood*, 900 F.2d at 1334).  Mr. Cardwell admits that he does not know what Nurse

9  Reshke was thinking or whether Nurse Reshke intentionally or deliberately circled the

10  incorrect response on Form 7277.  (2d SJ Mot. Ex. E (attaching excerpts of Cardwell

11  Dep.) at 77-78 ("Now, what he [Nurse Reshke] was thinking, intentionally, deliberate,

12  when he circled the certain one that's incorrect, I don't know what he was thinking.").)

13  He has also admitted that his proof with respect to motive or intentionality lies in Nurse

14  Reshke's signature on Form 7277.  (*See id.* at 80 ("But my proof of my evidence is with

15  his signature on the form.").)  This "proof," however, standing alone is insufficient.  As

16  noted above, mere errors in paperwork do not demonstrate deliberate indifference.  *See,

17  e.g.*, *Sherman-Bey*, 2012 WL 6864600, at *4.  Although Mr. Cardwell's evidence might

18  be sufficient to withstand summary judgment if all he had to establish was negligence or

19  even gross negligence on Nurse Reshke's part, it is not sufficient to establish that Nurse

20  Reshke acted with deliberate indifference.  Accordingly, the court grants Defendants'

21  motion with respect to Nurse Reshke.

22

ORDER- 17

1          **4.   Nurse Unterreiner**[11]

2          Even assuming Mr. Cardwell's version of events, there is nothing to suggest that

3    Nurse Unterreiner acted with deliberate indifference to Mr. Cardwell's medical needs.

4    When she was informed either by Mr. Cardwell or by her own review of his medical

5    records that he had a previous prescription for Gabapentin, she notified the nurse

6    practitioner who was on-call.  (*See* Unterreiner Decl. ¶ 4.)  Nurse Practitioner Miller

7    issued a telephone order for Motrin 800 milligrams, which Nurse Unterreiner

8    immediately copied to the pharmacy.  (*Id.* ¶¶ 4-6, Ex. A.)  Based on these facts, the court

9    cannot conclude that Nurse Unterreiner acted with deliberate indifference to Mr.

10   Cardwell's complaints of pain or his medical needs.

11         As noted above, there is a dispute in the record regarding whether Nurse

12   Unterreiner also referred Mr. Cardwell to the doctor's line.  (*See supra* at 6-7.)  Even

13   assuming the court credits Mr. Cardwell's version of events, however, he fails to defeat

14   summary judgment with respect to the element of deliberate indifference.  There is no

15   genuine dispute with respect to the fact that Nurse Unterreiner responded to Mr.

16   Cardwell's complaints.  As discussed above, just because Mr. Cardwell views Nurse

17   Unterreiner's response to be inadequate does not mean that he has established a

18   Constitutional violation.  *See Jackson*, 90 F.3d at 332.  There is no evidence to suggest

19   that Nurse Unterreiner's response was medically unacceptable under the circumstances or

20   _____

21         [11]The court initially denied summary judgment with respect to Nurse Unterreiner.
     (3/30/12 SJ Ord. at 14-15.)  At the time, however, the court did not have Nurse Unterreiner's
22   declaration before it.

1  in conscious disregard to an excessive risk to Mr. Cardwell's health.  *Id.*  Even if Nurse

2  Unterreiner's response was negligent in some way, she would still be entitled to summary

3  judgment with respect to deliberate indifference.  *Estelle*, 429 U.S. at 106 ("Medical

4  malpractice does not become a constitutional violation merely because the victim is a

5  prisoner.").  Accordingly, the court grants Defendants' motion with respect to Nurse

6  Unterreiner.

7  **5. Nurse Practitioner Miller**[12]

8  Mr. Cardwell also has failed to raise a triable issue of fact with respect to Nurse

9  Practitioner Miller.  The undisputed evidence is, that when Nurse Practitioner Miller

10 received a telephone call on December 3, 2007, from Nurse Unterreiner regarding Mr.

11 Cardwell, Nurse Practitioner Miller responded by issuing a telephone order for Motrin

12 800 milligrams and ordering a follow-up appointment with a doctor.  (Miller Decl. ¶ 10.)

13 Further, although she does not recall Nurse Unterreiner informing her that Mr. Cardwell

14 had requested or previously been prescribed Gabapentin, Nurse Practitioner Miller could

15 not have issued a telephone order for Gabapentin even had she been so informed.  (*Id.*

16 ¶ 11.)  Rather, she would have ordered a follow-up appointment with a physician, which

17 is precisely what she did in this case.  (*Id.*)  On these facts, the court cannot conclude that

18 Nurse Practitioner Miller acted with deliberate indifference.

19

20

_____

21 [12] The court initially denied summary judgment with respect to Nurse Practitioner Miller.
   (3/30/12 SJ Ord. at 14-15.)  At the time, however, the court did not have Nurse Practitioner
22 Miller's declaration before it.

1        Further, it is undisputed that Mr. Cardwell did eventually receive Gabapentin

2   sometime in December 2007.  (*See id.* ¶ 12 (Dr. James prescribed Gabapentin to Mr.

3   Cardwell on December 19, 2007); Reager Decl. Ex. 1 (Cardwell Dep.) at 27-28 (Mr.

4   Cardwell testifies that he received Gabapentin approximately in the first or second week

5   of December 2007).)  Indeed, Mr. Cardwell has admitted that he did not go very long at

6   HDSP without Gabapentin.  (*Id.*)  As discussed above, the fact that Mr. Cardwell did not

7   immediately obtain the pain medication of his choice does not state a Constitutional

8   violation.  *See, e.g.*, *Frost*, 152 F.3d at 1130 (court "find[s] no merit in

9   [prisoner/plaintiffs'] claim stemming from alleged delays in administering his pain

10  medication. . . ."); *Jackson v. Multnomah Cnty.*, No. 3:12-cv-00764-SI, 2013 WL

11  428456, at *6 (D. Or. Feb. 4, 2013) ("The failure to administer narcotic pain medication

12  in such circumstances [for chronic pain], however, does not rise to the level of a

13  constitutional infringement—[Plaintiff] was provided with non-narcotic pain

14  medications, and narcotics in these circumstances were not a life necessity."); *Lua*, 2011

15  WL 1743260, at *3 (prisoner/plaintiff failed to state Eighth Amendment claim where

16  prison doctor changed his pain medications prescribed for back pain).  Accordingly, the

17  court grants Defendants' motion with respect to Nurse Practitioner Miller.

18                          **IV.    CONCLUSION**

19        Based on the foregoing, the court DENIES Mr. Cardwell's sixth motion to appoint

20  counsel (Dkt. # 77), GRANTS Mr. Cardwell's motion for an extension of time to respond

21  //

22  //

1  to Defendants' motion for summary judgment (Dkt. # 80), and GRANTS Defendants'

2  motion for summary judgment (Dkt. # 78).

3       Dated this 28th day of March, 2013.

4

5                                       _____

6                                     JAMES L. ROBART
                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21